Good morning. My name is Stephen Ryan. I represent Cynthia Allocco. What I would like to do, and if maybe sound a little orthodox, but I want, if the court can give me about three minutes, I'd like to give you a roadmap as to how I think we get these issues resolved correctly and legally. And let me start by saying the only thing you will need to accept to adopt this roadmap is the proposition as difficult. Regardless of whether the trier of fact is a judge or a jury, the appellate analysis as to what happened and what the trier of fact did needs to be the same. It should not be different because this was tried to the bench versus a jury. So if we accept that proposition, then the roadmap is just as simply as follows. This jury, this trier of fact initially came back with a compensation of damages without compensatory damages. That is clearly erroneous and if it hadn't been a jury... Under Arizona law. Excuse me? Under Arizona law. Yes. It's not erroneous in other states, by the way. I understand. Had that been the case, and it was a jury, the judge would probably have done one of two things. Either declare a mistrial then or tell the jury to go back in and read the instructions and get it right. If the jury then returned and took that $50,000 and divided it by the amount of damages, then the judge would probably have said, well, we're going to go back in and get it right. If the jury then divided it into 20 for compensatories and 30 for punitives, what would then have happened? Clearly, that would have been a mistrial because the law is absolutely positively clear in Arizona that compensatories and punitives serve different things and that sort of irregular jury verdict would have resulted in a mistrial. Now, the only thing that we have in this case that makes it a little bit different is that we have the trial judge thereafter in her subsequent ruling stating that what she did was make a mistake and that she meant 20 and 30 from the beginning, just got it wrong and just goofed up. Now, the problem with that is if this were a jury under Arizona law, you could not consider that subjective thought process of the judge's statement that I made a mistake because under the Arizona law as set forth in Maxwell, you cannot use affidavits, you cannot impeach the trier of facts mental thinking behind closed doors as to what they did. So the way this case should be resolved is that this court should rule that even though Judge Silver said she made a mistake, we are not allowed to consider that because that is an attempt to impeach the trier of fact verdict by subjective thinking behind the closed doors and we don't disbelieve her, but we can't consider it because if this were a jury, you could not come in on a motion from a judge and say, well, I made a mistake. That would never even come into play. So if we adopt this way, we get the matter reversed, we do not even have to consider the issue of the sufficiency of the damages on either compensatory or punitives, and with all due respect, we eliminate the elephant in the room of having to deal with whether Judge Silver's statements as to how she had even have to be considered. Because they shouldn't even be considered. We should only consider the verdict as it was rendered with the 20 and 30 taking the $50,000 and reversing it. So what's your remedy here? What happens now, if we were to agree with you? The remedy is we are entitled to a new trial. Before Judge Silver, I take it? No, because we would obviously not be wanting to – it wouldn't be right to have the same trier of fact hear the case again. In other words, you wouldn't get the same jury back if they had issued something. But you go to a bench trial, you get the same judge. We may have that issue. That's why I say at the end of the day, send it back to Judge Silver. My guess is you're going to get the same result, being a bad person. You didn't ask for a jury trial here? Did you specifically ask for a bench trial or did you just not fail to ask for a jury trial? I waived the jury trial. You waived the jury trial. Yes, for strategy reasons. So, again, my point is that the answer is the case gets reversed. We don't have to consider the sufficiency of either element of damages. I mean, this would be the same. All right. So if the case gets reversed, then why doesn't MetLife get to assert its affirmative defense of no contractual duty? Because the district court decided that on the basis of a waiver, not the merits. Yes. And what this Court – I agree. This Court then needs to consider MetLife's position on that. And then the analysis there is did Judge Silver abuse her discretion in ruling that they waived it? Well, it seems to me you go back to square one. I mean, you get to – they get to – you retry, you do a final pretrial, you go to the mat? Well, I'm very comfortable – I'm just giving you my reaction. I'm very comfortable dealing with the special relationship issue on the merits with factual for the development in the trial court level. But first you would have to find that she abused her discretion before they get to raise that in the trial court level. But if you do find that she should have considered it, that's fine. Let it go back and we can deal with that too. But if we do it this way, again, we don't have to deal with these verdicts that are just absolutely unexplainable. I think everybody in this room agrees with that. We don't have to deal with the issue of whether Judge Silver is – you know, issue of – I don't want to use credibility. But we don't have to deal with that. We just eliminate it and treat it as the same as if this prior fact was a jury. Because a mistrial would clearly have been declared at that point by Judge Silver or anybody else. And we get to go back. We get our new trial. They get to raise their issue. And that is my respectful roadmap, the way this matter should be resolved. Well, the standard for a new trial, I guess, would include whether or not the reviewing court would have confidence in the determination of the lower court. The process, so to speak, would be embroiled in that analysis as to whether a new trial should be granted. Well, I mean, if you're asking in a different way, isn't the result going to likely be the same? Is that what you're – Well, no. Usually when we consider an application for a new trial, we have some discretion, I guess, as a district court judge, if we feel that there was something unfair about the way in which the trial evolved. We have some discretion to grant the new trial. It doesn't have to be based upon a determination that the jury was necessarily wrong. Fundamental concepts of fairness enter into the equation as well. Is that basically what we're talking about here in your opinion? It is, Judge Block, because if we put this in a jury context and make Judge Silver the judge, if the jury had done the $50,000 improper, she sent them back in, and they came back, and appearances-wise it looked like they obviously worked backwards to come up with the same amount of money, she would have declared a mistrial. Any judge would have, because that's wrong. Nobody argued. MetLife doesn't take the position that that's wrong. I mean, that's right. So this gets us to where I think we have a correct legal result, and we try this case over. Will you humor me for a minute on a collateral issue that's been bothering me since I opened the brief? Why isn't this ERISA preempted? No, I saw the citation, and I read the case, and it just appears to me. I mean, you open the case, you've got a disability plan, you've got a plan administrator. I mean, normally one says right away, it's ERISA. Actually, both sides agree that it is not ERISA, because there is an exception under ERISA for these so-called salary continuation plans. Right, but the case that's cited is a vacation sick leave pay case, which is not exactly the same as a long-term disability case. I don't know. I mean, you're both agreeing that ERISA is not in the case, but I must say I have my doubts on that. Well, again, I can address these other issues on the damages and so forth if you have questions about them. I think we have your argument in hand. Why don't you save your time for rebuttal? We've got about 11 minutes left, and then I want to hear from MetLife, and you may have some response you want to their. All right. Thanks. Good morning, Your Honors. Daniel Beeks on behalf of the Appley and, I guess, Cross Appellant Metropolitan Life Insurance Company. Plaintiff's counsel is asking you to do a pretty unconventional thing. Basically, they made clear in their motion for new trial that they had no problems with any of the judge's factual findings. They had no problems with any of the judge's legal conclusions. The only thing they had a problem with was the amount of damages. They want you to second-guess the trial judge's factual finding on what the appropriate amount of damages is. Those kinds of factual findings are the trial court's jobs. Unless there's a complete lack of evidence to support it or some suggestion of passion or prejudice, it's not really an issue for this court. I guess I'd like to – well, before we move on to the rest of my arguments, I'd like to deal with this You can't take Judge Silver's explanation that she always intended for it to be 20,000 of compensatories and 30,000 of punitives, and you can't consider that because you couldn't consider it if a jury submitted it in an affidavit. Whatever that argument is, which certainly hasn't been briefed, is waived. First I've heard, it's today. First you've seen it is today. I don't think it's an appropriate basis for this court to reverse on an argument that's raised for the first time at a rural argument. So I'd ask that you not even consider that argument. Let's look at what the judge did in this case. The district judge gave very careful consideration to this award. We had a two-day trial. The judge didn't rush and make a decision. It took her a full year to make a decision. She didn't blindly adopt Metlife's findings. She issued her own 40-page, self-crafted findings in an order. That's pretty unusual in a two-day trial, in my experience. Metlife certainly doesn't agree with everything the judge said in that 40-page order, but it certainly shows that this judge gave an awful lot of consideration and deliberation to this case. Let me ask you this. There's no question that there's bad faith here, and the judge was very clear about that, which suggests that the judge did not have it in for the plaintiff when it came to damages. But it seems to me that the judge was just wrong. The judge said $50,000 is what the punies ought to be, and then realized that, you know, we had this little legal problem under the applicable state law. Doesn't this sound, even though everything you say may be correct, that in this unique or unusual cup of tea, that fundamental fairness, you know, would sort of suggest that the case should go back before a new judge for a retrial? And doesn't, you know, don't we have the power to do that? I mean, I think to get there, you've got to say that Judge Silver was a liar when she said that she always intended it to be that way. I don't think so. I don't think you have to say that the judge is a liar. I just think that the process was very unusual and unique, the way it unfolded, that, you know, you can't have confidence that, you know, the integrity of the judicial process has been accommodated here. I think there are ways of dealing with that under these unique circumstances that it's best that it go back for a retrial. Why not? I mean, well, I agree it's unique that the judge made a mistake and didn't separate out compensatory damages and punitive damages. Well, the disclosure of the punitive damage, that she was thinking about awarding so you could take it into consideration for settlement purposes or something, I thought was a bit unusual. It was unusual in my experience, too. You usually don't have the juror come out to use the analogy and say, by the way, if you're thinking of settling, we're getting down to the punitives now and go back to the jury room. It's just an odd. I mean, if I'm Judge Silver and I'm facing writing a 40-page opinion, maybe I hope, as she probably did, that if I tell him this, it's going to force him to settle in this case. Didn't work. It was a good hope. It just didn't come to pass. But, yeah, it was unusual. She then spent a long time working on that order. She gave it awfully careful consideration. I think it's, yes, it's unusual that she didn't fill in two blanks. She lumped them together and made one lump sum and then fixed it. But I think you have to take her explanation at face value. Judges make sua sponte corrections all the time. Every time they make a sua sponte correction, it's not evidence of some constitutional violation and unfairness, and that judge shouldn't be able to correct themselves. It does seem a little odd, though, counsel, that after you've described the great care with which she went to the great lengths she went to write this opinion, taking almost a year in writing a 40-page opinion, advising you that she was going to award punitive damages, that she could then make the kind of mistake that she made here. I agree. It's somewhat unusual. As soon as it was called to her attention, she got it fixed. And there's nothing other than rank speculation that that's not what she intended all along. We can all sit back and say, well, that's fishy. But there's nothing to say that there's no evidence, there's nothing in the record that would allow you other than just speculation to say, oh, she's fibbing when she said she always intended it. Judges make mistakes, even after they've been working on something for a whole year, maybe even more so if you've been working on it for a year and you're getting a little further out and away from the arguments and the likes. I'm sure you guys go through that all the time. But I guess my point was she worked hard on this. This is not something that she did rashly, and she spent a whole lot more time on it than a jury normally would. A jury would spend a day or two on this deliberating. She spent months. That being the case, it's really not this Court's job to say the number's not big enough. And that's really what the plaintiff would like you to do in this case, is say the number's not big enough. The number was big enough in this case. There's two numbers, really, that were big enough. The compensatory damage of $20,000, that's big enough. And the punitive damage is. If not for the quirky way in which this thing evolved, I don't think you have to really argue too much about upholding the dollars here on this record. That's not really what we're talking about, I suspect. Let me ask you the question about duty. You raised a big fuss about all of that. The issue of duty is an issue of law, isn't it, usually? It's a decision of law, whether there's a duty under particular facts. If you're dealing with a court case, yes, it's a duty question. So you're making a fuss about duty here and raising this and that procedural situation that, you know, we're familiar with. But ultimately, if it's an issue of law, why can't this court decide whether, in fact, I guess it's Arizona, and the Arizona law plan administrator does indeed have a duty in this type of situation? What other facts would we have to know? Well, if you're talking about relying on the Farr and the Sparks case to reach that, I think there is a lack of evidence. If you're just going to kind of make that as a ‑‑ I suppose it depends on how you're going to get there. What would we have to know in order to decide the legal issue of whether there is a duty by the plan administrator under Arizona law? In this case, I would say there's nothing you need to know that's not already in the record, because all of the important facts were stipulated to in the pretrial memorandum we filed, that being that American Express created the salary continuation plan. They made the final level of review. They paid any benefits that were owed under the plan. MetLife was hired as a claims administrator to assist them. So we know all the facts then. Right. So why can't we then decide whether, as a matter of law, there is not a duty here? And what Arizona law would govern that determination? Well, we're talking about somewhat ‑‑ and I don't want to lump them together because I think it's important that they be separated. There's two issues. Number one is they're privity so that you get to the breach of contract, so that MetLife, as a claims administrator, has a contract that we can be held liable for breaching. And then there's a separate question as to, assuming you get past that hurdle, whether you can get tort damages for breach of the implied covenant of good faith and fair dealing. Well, why wouldn't she be a third-party beneficiary of the contract entitled to a special ‑‑ would put her in a special relationship with you? Well, if she's a third‑party ‑‑ Let me interrupt your question. No, no, no. Please. And that's a pretty fair argument. It doesn't get them where they want to go, is the simple answer. If they're a third-party beneficiary or we're somehow lumped together with American Express, that does not get the plaintiff to where they need to be, which is entitled to recover tort damages for breach of the implied covenant of good faith and fair dealing. If we're just jointly liable with American Express ‑‑ I was saying, why doesn't that put you in a special relationship? I mean, you start off with a third‑party beneficiary, and so they're entitled to at least quasi‑contractual damages under the breach of the covenant. To get to tort, you have to have a special relationship. But it's really under these situations where you have an insurance company administering the contract, I just don't see how you wouldn't have a fiduciary relationship. It's hard to see that. Well, we've cited the cases from, I believe it's Alabama and Texas, that have directly considered that issue and say, no, there is no special relationship. You know, you can't get there in Arizona law by citing those states. I mean, I can cite you states out of the Northwest that go completely the opposite way. So we're not going to stack ‑‑ we're not going to resolve this question by stacking up states. Well, I mean, the plaintiff obviously hasn't cited many cases out of the Northwest that I've read and in a position to talk very intelligently about today. But ‑‑ Is there Arizona law on point here? No. There's no Arizona opinions. You have to take the joint venture cases of Farr and Sparks. Those decided in a slightly different way. But if the pure can a claims administrator have a special relationship under Arizona law, there is no Arizona law on that. Arizona law has been very careful about finding special relationships. They've found it in the insurance context, and that's about it. They've not found it in the employer‑employee relationship, which is why they couldn't get it with American Express these days. Should that issue not be certified then to the Arizona court? I haven't thought about that. Plaintiffs never asked for that. And quite frankly, plaintiffs have never advanced the argument that as a matter of Arizona law, aside from the Farr and Sparks joint venture cases, that that ought to be the law. You say you want to go back for a new trial and you want to be able to raise your duty, the duty issue here, or you're saying it's waived. And if it's not waived, your district court or some court is going to be squarely faced with having to resolve as a matter of law whether there is or is not a duty under Arizona law. I guess I'm not asking for a new trial. I'm saying they didn't prove an affirmative element of their case. No, but part of your appeal is that you want to assert this defense. That's why we're asking about it. Right. Well, I mean, we certainly tried to do it in the trial court, and the court said we would waive it. But I'm saying if you're successful, if we agree with you, then you have the issue squarely presented to the lower court, right? I don't think it's something that needs to be presented to the lower court. I think all of the facts necessary to decide it are already in the record. There is no privity of contract between Metlife and Mrs. DeLoco. There would have to be a determination of law by some court as to what Arizona law is in respect to the facts of this particular case in terms of whether it's a matter of law, given those facts, there is or is not a duty, correct? I don't view it as a duty issue. It's is there a contract? Is there contractual privity between Metlife and Anna Locco? Well, let's take for you, you initially asserted that there was ERISA preemption here, right? As I recall. Well, I asserted ERISA preemption on the long-term disability claim, because for the long-term disability claim, there was insurance, and that's clearly ERISA. This is a payroll practice under some Treasury regulations. Right. But if we draw an analogy to ERISA, because what Metlife was doing was, at least in part, probably ERISA governed under this contract. And ERISA would have, in those circumstances, a fiduciary duties. There are fiduciary duties under ERISA that are defined. If we were operating on an ERISA plan, we would probably be a claims fiduciary  I haven't, you know, thought about it for quite a while. Well, do you think this is totally a non-ERISA plan? This is a non-ERISA plan under the payroll practice regulations issued. Totally. American Express is very clear, always, to everybody, that this is a payroll practice not governed by ERISA. I mean, it would have, from me as a lawyer's standpoint, it would have been a whole lot easier case to say, it's ERISA preempted. Of course. But unfortunately, I didn't have the law and the facts to back that up, and so we acknowledged and stipulated that it was not governed by ERISA. Right. But in an ERISA plan, you would have fiduciary duties that would be implied in ERISA. Why shouldn't we analogize that to a non-ERISA plan? Because with an ERISA plan, we would have been insuring. We would have had a direct relationship then with the plaintiff. We would have issued insurance to the plaintiff. In this case, there is no insurance. American Express is going to pay some money out of their bank account. They have hired us as an independent contractor to process some paperwork for them. They retain the final decision-making authority. They review the final level of appeals. They cut the check. We're not in a fiduciary position with Analoco. We owe duties to the American Express checkbook, but we don't owe fiduciary duties to Cynthia Analoco. So what happens? You have the power to deny a claim? No, we don't. And in this case, what is in the record but not talked about very much, especially by Judge Silver, is we process the first level of the claim. Then, if the claimant is unhappy, they get to appeal to MetLife and we'll consider it again. But in this case, if they don't like our opinion then, American Express gets the last appeal. There was a second appeal in this case, and it was considered fresh by American Express. They hired their own independent doctor to review it. He reviewed all the records that we were faulted for not giving to MetLife's independent doctors. That doctor made his own determination. There's not enough evidence to find she's disabled. And based on that, American Express, exercising its final appeal, exercising its right, made the decision not to pay. Does American Express indemnify you for any claims made against you individually, MetLife, under the contract? There's no evidence in the record one way or another on what happens, how the money is funded, other than American Express, if claims are – if benefits are awarded, American Express pays them. As to whether they indemnify us if we get sued in this type of a case – You didn't bring a third-party action against American Express? No. The principal claim here was the long-term disability. That appears to have been the focus of everybody's attention for a long time. And that's exactly how we ended up in this situation. The analogy that I've always used in this case is the long-term disability claim, that's the dog. This is the tail. This is just a little tag-along claim until summary judgment is granted on the long-term disability claim, and then this is all the plaintiffs are left with and we're left going to trial. Did you consider mediating the claim? We had some very extensive settlement negotiations that just didn't work out. Did you consider the court's mediation program? Our court. Oh, yeah. But by this point, it was unfortunately not going to work. I've used them with other clients, but in this case, it was pretty clear it wasn't going to work. Okay. I think we have your argument at hand, unless you have anything else you'd like to chat with us about. No, no. I appreciate it. Thank you. Thank you. Why didn't you sue American Express? I guess it's because under the long-term disability plan, there's no reason to do that, right? No. And respectfully, Mr. Beeks, I don't think is quite being accurate when he says that MetLife didn't have the power to deny this claim. They clearly denied this claim multiple occasions. Not only that, they then shut down their long-term file because they had already denied the short-term file. But American Express did have a final shot at all of this, right? There was an ultimate right of appeal to American Express, which your client exercised. Correct. And American Express did, is Mr. Beeks correct, that American Express did hire another doctor that had not been involved in here? That is correct. Conducted its own review, which was either thorough or not thorough or whatever, but American Express did make an independent judgment here. That is correct. And that was after the six-month of disability time window was lapsed. On the issue of the special relationship here, there's no question there is. I mean, this is, even though it's not, quote, insurance, end quote, it's the same thing. You've got one party who is vulnerable, who is disabled. You've got the party with the money who has the power to give or deny that by their own judgment and discretion. It's clearly a fiduciary situation, just analogous to the special relationship that exists in an insurance contract. And the Farr case in Arizona does, in fact, say that what are called TPAs or third-party administrators are liable for bad faith, just as is the insurance company. And this is an analogous situation. Again, it's not insurance, but they hired this company, NetLife, to do their work. And that's analogous to the third-party administrator being liable for this sort of contract. I mean, the difficulty is there are different decisions in different states, and this is a question solely of Arizona law. And I can't at this point predict what Arizona would do on that. I have a notion, but if I had to reach the merits of it, I'd want to think about that a little harder. Well, I think the Farr case would answer that pretty clearly. On the issue of whether you can make this a legal issue on their defense of so forth, I would remind the Court that I don't think you could resolve that in their favor. I think you could resolve it in my favor in the sense that she did not abuse her discretion in making that ruling. But the reason you can't do it the other way is because when I was told I don't need to make that proof, I didn't make any proof in the record, so it can't be judged. That wouldn't be fair enough to me. I was relieved of that. And if you decide I was wrongly relieved of that, you can't then say, well, let's just look at the facts in the record and see whether plaintiff did it or not. It would have to be sent back for a retrial on that issue as well. Well, what other factual information would you need to have? I would need to know. I would like to see the contract between MetLife and American Express. You'd want to see the contract, yeah. Excuse me? Sure. You'd want to see the contract. Sure. And I would like to have an understanding as to how they, how it's paid for, how MetLife is compensated. I mean, I can think of a lot of issues that I would go into in discovery if I needed to explore that relationship between those two companies and whether they are so united in what they're doing that it would be considered a special relationship. I mean, I gather your position is that you would probably prevail just on the facts in the record, but if you're going to try the case, you're going to go beyond that and put additional facts in to shore up your claim. Exactly. Yes, Judge Thomas. Let me see if I – again, we haven't talked about the sufficiency of damages, and I'm gathering the Court is not really interested in doing that right now. Well, we understand your argument on that, I think, but if you want to make a few additional points. Well, the only point I would make is if you get to that point, this case's posture is a little bit different than normal because most of the times when appellate courts decide whether the award was good enough or bad enough or low enough or high enough, the argument is always, well, we weren't there. We didn't see the witnesses. We didn't evaluate the credibility like the trier of fact did. But in this case, the trier of fact in her order has evaluated the credibility of those witnesses. She has said in no uncertain terms that my client and her husband were extremely credible, and I think the word she used was past all test of credibility. I mean, she wrote an opinion that was even stronger than the findings of fact I gave her. And, again, as you've both all analogized, how in the world do you take a year and write an opinion like this for 40 pages, tell us we're going to do punitive so that we can try to settle, and then come back with an award in total that's less than the jurisdictional amount for the Court to even have the case in the first place? Something happened here. Something happened here. But, again, we don't need to reach that because the Court should rule that you are not allowed to consider Judge Silver's explanation after the fact, just as you couldn't if it was a jury. And you just have to look at that verdict, realize it's erroneous as a matter of law, reverse, and send it back. Do you want to keep her bad faith finding, though? You don't want to relitigate that, do you? Obviously, I would rather keep it. I'm perfectly content to try the case from scratch again because the evidence is not going to change. If you try it before another judge, as you've requested, on the damages, you're going to have to retry it on the question of bad faith, aren't you? You don't get to start with Judge Silver's findings and take it before another judge just on the question of damages. I'm sorry. If we send this back, you're asking that we send it to another judge. You don't want us to send it to another judge. Well, maybe you do, but you don't think it would be correct for us to send it back to another judge, say you are bound by Judge Silver's findings of fact, but you get to retry it only on the question of damages. You know, I'm not sure what's the correct way to do this. I mean, the facts, they're not going to change. I'm happy to try the case from start to finish over. Obviously, I'd be delighted to get to do this thing again and get a better result and a fair result this time, I hope. But, again, I'm not so sure it's wrong to say that these findings, depends on how you decide or what basis, I guess, you decide to send it back. If it's just the irregularity of the so-called verdict, that doesn't change the findings of fact that the trier of fact made. And if we send it back, has MetLife still waived its you-have-no-contract argument? Again, I'm in the beggars can't be choosers category. I'm happy to litigate that issue. I gather your position is that you think that the discovery's closed, they've waived it, and you just try it again. And their position is, well, if we get there, we get to start over from scratch. And you basically indicated you're not afraid of that. As long as you get discovery on that issue, you're happy to try it. Is that kind of it? I'm not afraid of it, no. Okay. Well, thank you very much for your arguments, and thank you for coming here today. It's an interesting case. And the case is termed as ‑‑ Thank you.
judges: Thomas, Bybee, Block